No. 22.—WILLIAM D. CAIRNS, in right of his wife, and as guardian, &c., plaintiff in error, *vs.* ALFRED IVERSON, defendant in error.

[1.] A obtains a judgment *quando acciderint* against B, the administrator of C. D gets an absolute judgment against B, the administrator, for the surplus estate in his hands coming to D, as the only heir and distributee of C. E, the security of B, upon his administration bond, pays off the judgment of D. *Held*, that A has no right to subject this money, in the hands of D, to the satisfaction of his judgment *quando*.

In Equity. Motion by plaintiff in error, who was defendant below, to dismiss the bill for want of equity. In Muscogee Superior Court, May Term, 1847, before Judge Alexander.

The facts stated in the bill, and the questions made and decided in the Court below, are fully stated in the opinion delivered by the Supreme Court, to which the reader is referred.

HOLT, for the plaintiff in error, insisted :

1st. That the complainant, by failing to take issue upon the plea of *plene administravit*, and to controvert the same, and consenting to take judgment *quando acciderint*, admitted that the administrator had fully administered up to the time of plea pleaded and judgment rendered ; and tha the was concluded and estopped by said judgment from again litigating the question of assets, or making satisfaction of his judgment, except from such as had come to the hands of the administrator *after* the judgment ; and that they had accrued *after*, was a fact which should affirmatively appear on the pleadings as well as by the proof.

2d. That the fund which the complainant sought to pursue, was not, and never had been, by his own showing, assets in the hands of the administrator, either before or after his judgment.

And cited the following authorities :—2 *Will. on Ex'rs.* 1415 ; *Toller on Ex'rs.* 470 ; 2 *Tidd Pr.* 1113 ; 1 *id.* 683 ; *Buller N. P* 169 ; *Noell* vs. *Nelson,* 3 *Saunders R.* 219, 220, *note* 2 ; *Mara* vs. *Quin, ex'x.* 6 *Durn. & E.* 1 ; 8 *Ala. R. n. s.* 920, *as to alternative charges in a bill and their effect ;* 2 *Will. on Ex'rs.* 1176, 1196— *Assets, what ?—*

JONES, BENNING & JONES, for the defendant in error, made the following points :

1st. Trust property, or that into which it has been converted, may be followed by *cestui que trust* into the hands of any one who is not a purchaser for a valuable consideration and *bona fide*. 1 *Story Eq.* secs. 580, 581.

2d. Assets in the hands of an administrator are a trust fund for creditors of the intestate. 1 *Story Eq.* sec. 579.

3d. Next of kin, to whom these may have been distributed, are not purchasers for a valuable consideration. As to creditors, they are only trustees of the fund distributed, occupying the place of the administrator, and therefore cannot withhold such fund from creditors.

2 *Will. Ex'rs.* 892, 893, 834; *Russell C. C.* 136, 137; 2 *Vernon* 205; *Greig* vs. *Somerville*, 1 *Russ. & M.* 338; *March* vs. *Russell*, 3 *Myl. & Cr.* 31.

Particularly can they not withhold on a plea which the administrator himself could not maintain, *e. g.* a plea that such fund was in the administrator's hands at the date of such creditor's judgment, and that such judgment was a judgment of no other assets except assets *in futuro.*

The administrator, and all standing in his shoes, are estopped from saying the fund was in hand at that date, by the judgment that it was not in hand, and therefore it will be conclusively presumed that such fund '*accidit*' after judgment. 1 *Kelly* 371.

4th. But in fact it does not appear from the bill, that Dillingham, the administrator, had in hand at the date of Iverson's judgment, the assets recovered by Cairns & Wife.

5th. Sureties have the right to go forward of their own accord and pay the debt which they are bound for; and this, whether the debt be in judgment against their principal or not. Such payment satisfies the debt, and lays the foundation of an action for money paid to the principal's use and at his *request*. 2 *Kelly* 617; *Pitman, Prin. & Sur.* 96, 97, 98; (*Law Lib.*) 8 *T. R.* 308; *Broughton's Case* 5 *R.* 24; *Hodgson* vs. *Shaw*, 3 *Myl. & K.* 183; 14 *Ves.* 567; 3 *B. & Ad.* 407.

In the case of sureties to an administrator's bond, they are in some sort privies to all judgments against the administrator, their principal, and therefore *prima facie* bound by them. 1 *Kelly* 371; *ib.* 578.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The defendant in error filed his bill against the plaintiff in error, alleging that he, the complainant, in 1837, sued John Dillingham as administrator of George W. Dillingham, to recover a debt due by the said George W. in his life time. That at the May Term 1841, of Muscogee Superior Court, (the defendant having pleaded *plene administravit*,) he recovered final judgment *quando acciderint* for the sum of $6,147 principal and $3,524 interest.

The bill also alleges that Cairns, in right of his wife and as guardian of his child, they being the widow and child and only heirs of said George W. Dillingham, prosecuted in the same court a suit against the said administrator, and on the 10th of November 1841, recovered final judgment for the sum of $7,425 83 principal and $279 34 interest.

It also charges that the judgment in favour of Iverson was taken *quando acciderint;* he having been unable at the time when his judgment was rendered to controvert the plea of *plene administravit,* and that since his judgment, " no assets of said intestate have come into the hands of said administrator, that have been visible or that have come to the knowledge of the complainant, out of which to have satisfaction ;" and that about the time of the rendition of his said judgment, the said administrator, being personally insolvent, fled the country to parts unknown.

The bill further states, that the judgment in favour of Cairns has since its rendition, been collected and received by him, either from the said administrator or from his securities upon his administration bond, and that the amount so received and collected was *assets* in the hands of the administrator, and as such, the complainant seeks to follow and apply it to the payment of his judgment *quando acciderint.*

Cairns, the defendant in the bill, moved to dismiss it for want of equity. The Court below, after argument, denied the motion ; whereupon the said Cairns, by his counsel, excepted.

Counsel for the plaintiff in error contends, that the pleadings prove conclusively that the administrator had fully administered up to the rendition of Iverson's judgment; and that if assets have accrued since, it is a fact which should affirmatively appear ; and that the assets which the complainant seeks to appropriate, never were in the hands of the administrator, either before or since the judgment.

Cairns vs. Iverson.

On the other hand, it is urged in behalf of Iverson, that trust property, or that into which it has been converted, may be followed by the ,cestui que trust into the hands of any person, who is not a bona fide purchaser for a valuable consideration ;—that assets in the hands of an administrator are a trust fund for the creditors and distributees of the intestate ;—that the next of kin to whom such fund is distributed are not bona fide purchasers—but, as to creditors, trustees of the fund so distributed, and occupying the place of the administrator, and that they cannot withhold such fund from the creditors.

It was further insisted on the same side, that securities have the right to go forward of their own accord and pay the debt for which they are bound, and that, whether the same be in a judgment against their principal or not; and that such payment satisfies the debt, and lays the foundation for an action for money paid for the principal's use and at his request.

We can say with truth that we have rarely listened to a [1.] more ingenious or powerfully condensed discussion, and that we concur in every position assumed by the counsel of Iverson. We admit that trust assets or their proceeds may be followed into the hands of *volunteers* and appropriated ;—that the creditor of an estate may pursue the property thereof, or the money arising from its sale, into the hands of a distributee—whether there by the voluntary settlement of the administrator, or by a recovery at law, and apply it to the payment of his outstanding demand.

But the question is, does the money paid by a security upon an administration bond out of his own pocket, either voluntarily or by coercion, come under the same category ? We think not. We cannot in any view of the matter, consider this fund paid by the securities to Cairns, as clothed with any of the attributes of the original trust estate, whether we look to the source from which the money comes, or the mode of reimbursement to the securities. Property of an estate, or its proceeds, is followed into the hands of the heirs, for the obvious reason that it is right that creditors should be first paid out of it. But here, nothing has been abstracted from the estate of Dillingham. All is there that ever was there. The creditors are not hindered or delayed in the least, in the collection of their claims. The fund is not diminished out of which they are to be discharged. True, the distributees, by their good fortune or superior vigilance, have obtained such a judgment as would enable them to get their money out of *third persons*. We cannot see

Cairns *vs*. Iverson.

how this constitutes any ground of equity in behalf of Iverson, to pursue this money.

Being no parties to the suit, suppose equity were to subrogate the securities of the administrator to all the rights and remedies of Cairns, whose debt they have satisfied; if Dillingham, by way of reimbursement, should turn over to them assets of the estate, Iverson could seize and appropriate them. But if nothing could be found, and they had to sue their principal, he would be made chargeable in his individual and not in his representative character, and the money thus raised would certainly not be liable to the creditors of the estate.

At the first blush, it seemed to be wrong that a distributee should get his money, and a creditor, who had a judgment *quando*, lose his debt. But, upon reflection, this need not be. If the administrator has permitted assets which came to his hands since the rendition of Iverson's judgment, to be wasted or misapplied, he is clearly responsible to the creditors; so that nothing can be lost to the creditor, which belonged to the estate, except by his own consent. And the securities, by coming forward and paying off the absolute judgment in favour of the distributees, and upon which they were ultimately bound, have not thereby relieved themselves from liability on account of the mal-administration of their principal.

We do not say that the recovery by Cairns would be proof in a proceeding at the instance of Iverson, that assets to the amount of Cairns' judgment, or any other amount, had come into the hands of Dillingham since the rendition of Iverson's judgment *quando*.

Moreover, we have assumed that the money received by Cairns was paid by the securities. The bill charges, that it was collected either from the administrator or his securities; and it is a well-established rule in equity, that a bill which states the cause of action in the alternative, is insufficient if one of the alternatives shows that he has no right of recovery, as the bill must be construed most strongly against the pleader. Indeed, all the statements in the bill corroborate the legal inference in this case, that the money was in fact paid by the securities.

It may be well enough to add, by way of precaution, that in a contest like the present between Iverson and the heirs, we are not prepared to admit that it would be necessary to allege and show that assets found in the possession of the heirs had come from the administrator, since the obtainment of the judgment *quando*. Sup-

pose a negro, or any other specific chattel embraced in the original inventory, was found in the hands of a distributee, and it was ad-mitted to have been placed there in the course of administration, would it be necessary for the judgment creditor *quando*, to ascer-tain and establish that it came there since the rendition of his judgment, before it could be appropriated to its payment ? We apprehend not. The doctrine, therefore, that in order to charge an executor or administrator upon a judgment *quando*, that it must be alleged and shown that the goods came to his hands *since* the judgment, relates to creditor and debtor and not to the creditor and third persons.

Judgment reversed.